Hope GARRISON, by her Next Friend, Charles Garrison; Efser Garrison and Charles S. Garrison, Plaintiffs Below, Appellants,

v.

The MEDICAL CENTER OF DELAWARE INC., a Corporation of the State of Delaware, Elizabeth Bove and Digamber Borgaonkar, PH.D., Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Dec. 13, 1988.
Resubmitted on Supplemental Briefing: July 13, 1989.
Decided: Dec. 12, 1989.
Opinion Issued: Oct. 9, 1990.

Roger A. Akin (argued), Christopher J. Curtin, and Bruce C. Herron of Sawyer & Akin, P.A., Wilmington, for appellants.

John A. Parkins, Jr. (argued), David C. Johnson–Glebe, and Joseph R. Slights, III of Richards, Layton & Finger, Wilmington, for appellees.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ., constituting the Court en banc.

HORSEY, Justice:

In this medical malpractice action, we address related issues of first impression under Delaware law: (1) whether the parents of a child born with a genetic disorder have a cause of action against health care providers who fail to timely detect the presence of a genetic disorder, thus precluding the option of terminating the pregnancy [a so-called "wrongful birth" cause of action]; and (2) whether a child born with a genetic disorder has a cause of action against negligent health care providers for an impaired life resulting from the genetic defects [a so-called "wrongful life" cause of action].[1] On the first issue, we hold that a cause of action exists for the negligence of a health care provider which results in prejudicial delay in reporting the results of a chromosome study. If such negligence is proved, the parents may be deprived of making an informed choice whether to continue the pregnancy or to terminate the pregnancy in a time and manner permitted under law. While characterized in many jurisdictions as "wrongful birth," the actionable claim that we recognize is an act of negligence or medical malpractice based on negligent performance of a medical procedure and negligent delay in transmitting the results of diagnostic tests.

On the second issue, we hold that no cause of action lies on behalf of the child against health care providers based on a claim of "wrongful life."

I

In their complaint filed in Superior Court in December 1987, plaintiffs, Hope Garrison, an infant, and Charles and Efser Garrison, the infant's parents, assert claims for "wrongful birth" and for "wrongful life" resulting from the birth of Hope Garrison with Down's Syndrome on November 30, 1986. The defendants are: Medical Center of Delaware, Inc. ("Medical Center"); Elizabeth Bove, a technician at the Medical Center's cytogenetics laboratory; and Digamber Borgaonkar, Ph.D., director of the Medical Center's cytogenetics laboratory. Plaintiffs allege that defendants improperly performed a medical procedure known as amniocentesis and negligently delayed informing the plaintiff parents of the results of the chromosome study so that plaintiffs did not learn of the test results until the third trimester of the pregnancy.

Efser Garrison was thirty-nine years old when she was informed by her physician that she was pregnant. Following referral to a state health care counselor, in early July plaintiff was informed of the increased risk, due to her age, of the fetus' being afflicted with Down's Syndrome, a condition characterized by mental retardation, muscular hypotonicity and mongolism. She was also informed of the availability at the Medical Center of amniocentesis, a medical procedure permitting prenatal diagnosis of chromosomal abnormalities, including Down's Syndrome. Plaintiff then decided to undergo the medical procedure; and she and her husband further decided that she would terminate the pregnancy if the test results showed the fetus to be so afflicted.

Plaintiff timely[2] submitted to an amniocentesis procedure at the Medical Center in mid-July 1986, during the seventeenth

---

1. The terms "wrongful birth" and "wrongful life" can be confusing. A claim for "wrongful birth" is a claim by parents for damages arising from the birth of a child. Its essential premise is that the parents have been injured by the negligence of a health care provider which foreclosed the opportunity of the parents to make an informed decision whether to continue or terminate a pregnancy. A claim for "wrongful life" is a claim on behalf of the child. Its premise is that the child would have been better off if the child had never been born at all.

2. A sample of amniotic fluid containing fetal cells which can be cultured to identify the cytogenetic makeup of the fetus is usually obtained at sixteen to eighteen weeks' gestation. 1 Ausman & Snyder, *Medical Library: Gynecology & Obstetrics* § 2.66 (L.Ed.1988).

week of her pregnancy. After not being informed by Dr. Borgaonkar until early August 1986 of the inadequacy of the first sample for testing, plaintiff, during her twenty-first week of pregnancy, again submitted to the medical procedure by a Medical Center physician, not a party defendant. The named individual defendants then delayed the completing and reporting of the results of the second analysis to plaintiff's physician until September 9, 1986. Thus, the plaintiff parents did not learn of the presence of the Down's Syndrome chromosome in the fetus until the commencement of the third trimester of pregnancy.

Thereafter, when plaintiffs sought to terminate the pregnancy at the Medical Center, they were only then informed by the Center of its policy of not permitting the eugenic termination of pregnancy after the first two trimesters, or twenty-six weeks, of pregnancy. Plaintiffs assert that as a result of defendants' negligence, they were deprived of the opportunity of making an informed decision either to carry the child to term or to undergo a timely and legal abortion of the fetus.

Following defendants' filing of a motion to dismiss the complaint for failure to state a claim for relief under Delaware law, the parties stipulated, for the purposes of the motion, to plaintiffs' well-pleaded allegations. Superior Court then certified the following questions to this Court under Supreme Court Rule 41:

> 1. Do the parents of a child born with a genetic defect have a cause of action for "wrongful birth" against a health care provider whose negligence deprived them of the opportunity to decide whether to continue the pregnancy of the defective child to term?

> 2. Does a child born with genetic defects have a cause of action for "wrongful life" against a health care provider whose negligence deprived the child's parents of the opportunity to accept or reject the child's birth?

Following this Court's acceptance of the questions certified on June 9, 1988, and briefing and argument before a panel of this Court on November 1, 1988, the case was rescheduled for hearing before the Court en banc and was heard on December 13, 1988. By Order dated March 23, 1989, this Court directed supplemental briefing on further questions posed by the Court, which was completed on or about July 13, 1989. Satisfied that the parties had fully addressed the novel issues presented, this Court, by order dated December 12, 1989, answered the first question in the affirmative and the second question in the negative.[3] We now give the reasons for our decision.

## II

■ Addressing the first question, we hold that there is an actionable claim under Delaware law, rooted in common law, for negligence in performing a medical testing procedure and for negligence in failing to timely report the results of testing. The cause of action need not be characterized as "wrongful birth" since it falls within the realm of traditional tort and medical malpractice law. To prevail in such an action, plaintiffs must establish a duty on the part of defendants to report test results in a timely fashion, a breach of that duty, and a resulting injury proximately caused by the breach. The resulting injury to the plaintiff parents lies in their being deprived of the opportunity to make an informed decision to terminate the pregnancy, requiring them to incur extraordinary expenses in the care and education of their child afflicted with a genetic abnormality.

### A.

The potential liability of the health care providers under the cause of action we recognize on behalf of the plaintiff parents results from the application of ordinary tort principles and the finding of the elements of negligence. Defendants argue that such a cause of action was unknown at

---

3. *Garrison v. Medical Center of Delaware, Inc.,* Del.Supr., No. 193, 1988, Horsey, J. 571 A.2d 786 (Dec. 12, 1989) (ORDER).

common law and must therefore be enacted by the General Assembly, which can better weigh the important policy implications involved. We reject this formalistic argument and hold that an action in tort for a negligently performed or delayed medical diagnostic procedure lies within the common law of negligence, and therefore is actionable.[4] *See Phillips v. United States,* D.S.C., 508 F.Supp. 544 (1981); *Gildiner v. Thomas Jefferson University Hospital,* E.D.Pa., 451 F.Supp. 692, 696 (1978).

Alternatively, defendants assert that our earlier decision in *Coleman v. Garrison,* Del.Supr., 349 A.2d 8 (1975), precludes the recognition of a cause of action in the instant case. However, the factual premise of *Coleman* is readily distinguished from the facts of this case, and, therefore, *Coleman* is not controlling. In *Coleman,* the plaintiffs brought a medical malpractice action based on the improper performance of a sterilization procedure, resulting in the birth of a healthy child. Although the *Coleman* Court characterized the *Coleman* plaintiffs' action as one of "wrongful life," the *Coleman* case involved a tort action more properly termed "wrongful pregnancy." *See University of Arizona v. Superior Court,* Ariz.Supr., 136 Ariz. 579, 667 P.2d 1294, 1296 n. 1 (1983). The Court in *Coleman* denied recovery because the damages in that case were speculative. The recovery sought was the full cost of raising an unwanted, but normal and healthy, child.[5] 349 A.2d at 12.

Unlike the *Coleman* case, the Garrisons' asserted damages are not speculative. Due to the defendants' asserted negligence, the parents were arguably denied the opportunity to make an informed choice to legally and timely terminate the pregnancy due to the fetus' potential for birth defects. As a result of being denied the option of abortion, the parents face ascertainable damages in the form of the additional financial burden of raising a child with Down's Syndrome, an amount far exceeding the cost of raising a normal child, the difference being the measure of the parents' recoverable damages.

In contrast, the only injury in *Coleman* was the birth of a well, albeit unwanted, child. The parties in *Coleman* did not dispute the defendant-surgeon's liability for provable pain and discomfort of pregnancy, medical expenses of pregnancy, and loss of consortium sustained by Mr. Coleman. 349 A.2d at 11 n. 5. However, we concluded that the pleasure and benefits derived by the parents from a *normal* child could not be monetarily determined. We therefore found no legal basis for shifting the costs of raising the child away from the parents

4. We reject as misguided defendants' argument that so-called claims for wrongful birth should not lie in the absence of legislation because such claims were "unknown at common law." To recognize such a claim, defendants assert, would involve this Court in "policy making," a matter which is more properly left to the province of the legislative and executive branches of government. Since a claim for wrongful death could not be maintained in Delaware at common law in the absence of an authorizing statute, *Saunders v. Hill,* Del.Supr., 202 A.2d 807 (1964), defendants state that similar public policy considerations should lead the Court to leave to the Legislature the regulation of claims for wrongful life. *Hickman v. Group Health Plan, Inc.,* Minn.Supr., 396 N.W.2d 10 (1986). The argument misconceives the relief plaintiffs seek and the remedy which this Court finds appropriate and in keeping with traditional tort principles. Where the economic relief sought is confined to the recovery of the extraordinary expenses incurred and to be incurred by plaintiff parents in the treating of their child's condition, and which relates solely to the physical defects

alleged to have resulted from the negligence of defendants, the calculation of the measure of damages arising from such a claim is "well within the methods of proof employed in personal injury cases." *Siemieniec v. Lutheran General Hospital,* 134 Ill.App.3d 823, 826, 480 N.E.2d 1227, 1230 (1985), *aff'd in part, rev'd in part,* Supr., 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987). The cause of action we recognize lies in negligence, and it is a judicial function to determine the contours of the common law of negligence. Therefore, legislative action is not required. *Gildiner v. Thomas Jefferson University Hospital,* E.D.Pa., 451 F.Supp. 692, 696 (1978).

5. In *Coleman,* we concluded that there were no provable damages when a normal child is born to parents not desiring the birth of a child. The problem of proof lay in balancing the value and enjoyment to the parents of the unwanted life against its costs. "A child is born—how can it be said within the ambit of legal predictability that the monetary cost of that life is worth more than its value?" 349 A.2d at 12.

because of the impossibility of valuing the set-off of benefits.

The underlying rationale of *Coleman* is not offended when parents seek only to recover the *additional* expense of raising a child with genetic defects when, but for the negligence of the health care provider, the parents would have otherwise exercised an informed choice not to bear the child. *Dumer v. St. Michael's Hospital,* Supr., 69 Wis.2d 766, 233 N.W.2d 372, 376 (1975). If the health care provider deprives the parents of the ability to choose not to carry an unwell fetus to term, the provider may be held liable for the resulting extraordinary expenses of the parents for child care. However, to the extent this decision may otherwise conflict with *Coleman, Coleman* is modified.

We thus join with a majority of jurisdictions who have addressed the subject, recognizing a cause of action for negligent performance or delay in diagnostic testing for birth defects, either under the guise of traditional tort analysis or "wrongful birth." *See, e.g., Viccaro v. Milunsky,* Supr., 406 Mass. 777, 551 N.E.2d 8, 10 (1990) (parents have cause of action for negligent preconception genetic counseling that instigated birth of second child, the "wrongfulness" being in the negligence of the physician and not the birth itself); *Lininger v. Eisenbaum,* Colo.Supr., 764 P.2d 1202 (1988) (parents have cause of action under a common law negligence theory where physicians failed to detect genetic defect in plaintiff's first child and plaintiff's second child was born with the same defect); *Haymon v. Wilkerson,* D.C.App., 535 A.2d 880 (1987) (parent of Down's Syndrome child has cause of action for wrongful birth where physician failed to properly advise amniocentesis); *Siemieniec v. Lutheran General Hospital,* Supr., 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987) (parents of child born with hemophilia have cause of action against hospitals and physicians for failure to accurately advise of risk of hemophilia); *Harbeson v. Parke–Davis, Inc.,* Supr., 98 Wash.2d 460, 656 P.2d 483 (1983) (health care providers have duty to inform patient as to the likely effect of anticonvulsant drug on future children).

### B.

█ Having determined that plaintiffs have a cause of action for the negligence of the health care providers in processing and relaying the test results, we turn to the measure of plaintiff's damages. We hold that the parents may be able to recover damages to the extent the extraordinary expenses of caring for, maintaining and educating the child exceed the usual costs of raising an unimpaired child. Under Delaware law, parents have a continuing obligation to provide for their children who cannot care for themselves. 13 *Del.C.* § 503. Consistent with that duty, we hold that the parents may recover damages measured by the life of the child or the child's life expectancy to the extent she remains dependent upon either or both of her parents. However, we also hold that the parents stand in a fiduciary relationship with the child in the care and expenditure of all sums recovered. Accordingly, the trial court must govern the manner in which the parents are to account for the investment and expenditure of any amounts received as damages. In exercising this supervisory authority, in the event that damages are awarded, the Superior Court is directed to then transfer this matter to the Court of Chancery for the establishment of an appropriate guardianship.

Recoverable damages are only those *beyond* the normal costs of raising a child. Awarding the normal expenses of raising a child would be disproportionate to the wrong involved and might actually constitute a windfall to the parents who enjoy the love and affection of the child. *Berman v. Allan,* Supr., 80 N.J. 421, 404 A.2d 8, 14 (1979); *Coleman v. Garrison,* 349 A.2d at 12. However, these policy concerns are not implicated when damages are awarded only to the extent of expenses related to the affliction. Thus, the parents' pleasure derived from the child will be "derived in spite of, rather than because of, [the child's] affliction." *Schroeder v. Perkel,* Supr., 87 N.J. 53, 432 A.2d 834, 842

(1981) (distinguishing *Berman v. Allan,* where the ordinary costs of raising a child were sought). Our ruling guarantees the child's care in the future by permitting her parents to recover extraordinary expenses for the duration of the child's life. These damages are not speculative and are within the means of proof normally utilized in personal injury cases. *See Haymon v. Wilkerson,* 535 A.2d at 885.

■ The plaintiff parents also claim damages for emotional distress as a non-speculative consideration to be compensated due to defendants' negligence. We deny this claim as unfounded and contrary to Delaware law. It is settled law in Delaware that, in a negligence action, for a claim of mental anguish to lie, an essential ingredient is present and demonstrable physical injury to the plaintiff. *Mergenthaler v. Asbestos Corp. of America,* Del. Supr., 480 A.2d 647 (1984). *See Becker v. Schwartz,* Ct.App., 46 N.Y.2d 401, 413 N.Y. S.2d 895, 386 N.E.2d 807, 814 (1978) ("calculation of damages for plaintiff's emotional injuries remains too speculative to permit recovery notwithstanding the breach of duty from defendants to themselves"). *Compare Cummings v. Pinder,* Del.Supr., 574 A.2d 843, 845 (1990) (sustaining award of damages for emotional distress for conduct arising out of attorney-client relationship, absent evidence of physical harm, because "the intentional infliction of severe emotional distress may provide the legal predicate for an award of damages, even in the absence of accompanying bodily harm, if such conduct is viewed as outrageous") (*citing Restatement (Second) of Torts* § 46(1) (1965)). *But see Harbeson v. Parke–Davis, Inc.,* 656 P.2d at 492–93 (Washington statute allows parents to recover for emotional injury in wrongful birth action, offset by emotional benefits).

### III

■ Turning to the child's claim for recovery based on "wrongful life," we hold that the child has no cause of action on a theory that defendants' negligence deprived the child's parents of the opportunity to reject her birth. As we have stated, the plaintiff parents have an ascertainable legal injury. This injury is not the child's life, even in its impaired state; rather, the injury is the parents' deprivation of an opportunity to exercise an informed choice whether to continue or terminate the pregnancy. The child's purported claim for "wrongful life" must fail because she has not suffered an injury due to the negligence of defendants.

The child is afflicted with Down's Syndrome, but this condition was not caused by any action or inaction of the defendants. If the defendants had reported the chromosomal abnormality in a timely fashion, the pregnancy may have been terminated, but the fact of the genetic disorder present in the fetus would not have changed. *See Dumer v. St. Michael's Hospital,* 233 N.W.2d at 374–75. There may be a causal link between defendants' negligence and the child's existence, but not between that negligence and her impaired condition. Thus, the instant case is distinguishable from situations where a negligent act is inflicted on a mother prior to conception, resulting later in the birth of an impaired child. A cause of action has been allowed in such a situation due to the direct relationship between the defendant's negligence and the child's subsequent impairment. *See, e.g., Renslow v. Mennonite Hospital,* Supr., 67 Ill.2d 348, 10 Ill.Dec. 484, 489, 367 N.E.2d 1250, 1255 (1977) (recognizing a "right to be born free from prenatal injuries foreseeably caused by a breach of duty to the child's mother," where child was born impaired due to a negligent transfusion of Rh-positive blood to the mother several years prior to conception).

We adopt the view of many jurisdictions that have denied wrongful life claims due to the impossible task of identifying damages based on a comparison between life in the child's impaired state and nonexistence. *See, e.g., Lininger v. Eisenbaum,* 764 P.2d at 1210; *Siemieniec v. Lutheran General Hospital,* 111 Ill.Dec. at 311, 512 N.E.2d at 700 ("no right not to be born, even into a life of hardship, has ever been recognized in our judicial system"); *Azzolino v. Ding-*

*felder,* Supr., 315 N.C. 103, 337 S.E.2d 528, 534 (1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). We concur with the view that the question of whether it would have been better for an impaired child to never have lived at all is a philosophical one not amenable to judicial resolution. *See, e.g., Becker v. Schwartz,* 413 N.Y.S.2d 895, 386 N.E.2d at 812.

We recognize that a few jurisdictions have been willing to allow a child to maintain an action for wrongful life. *Procanik by Procanik v. Cillo,* Supr., 97 N.J. 339, 478 A.2d 755 (1984) (child born with congenital rubella syndrome may recover extraordinary medical expenses); *Harbeson v. Parke–Davis, Inc.,* 656 P.2d at 495 (child may recover extraordinary expenses, but costs of child's care may only be recovered once); *Turpin v. Sortini,* Cal.Supr., 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954, 965 (1982) (awarding special damages to child). However, the cause of action we recognize to lie in the parents will enable them to recover the extraordinary expenses for the life of the child, leaving no ascertainable damages to be recovered by the child herself. While medical negligence may have allowed the child to come into existence, it did not cause the impairment which is her basis for relief. Thus, the child's claim for damages, if any, is too attenuated to attribute to the negligence of the medical provider.