FLANAGAN et al., Appellants,

v.

WILLIAMS et al., Appellees.

[Cite as *Flanagan v. Williams* (1993), 87 Ohio App.3d 768.]

Court of Appeals of Ohio,
Washington County.

No. 92CA27.

Decided July 8, 1993.

*Lamkin, Van Eman, Trimble, Beals & Rourke* and *Michael J. Rourke,* for appellants.

*Jacobson, Maynard, Tuschman & Kalur, Gayle E. Arnold* and *David C. Calderhead,* for appellees.

HARSHA, Presiding Judge.

Trina K. and Richard Flanagan and their minor child Danielle appeal the judgment on the pleadings entered by the Washington County Common Pleas Court in favor of Doctors Williams, Cooper, and White, and the Marietta Gynecological Associates.

Appellants assign the following errors:

"I. The lower court erred in ruling that Ohio does not allow a cause of action for wrongful birth in that the rulings of the Ohio Supreme Court and the vast majority of other jurisdictions provide overwhelming endorsement to 'wrongful birth' causes of action which compel its adoption here as Ohio has always upheld the right of the innocent to be compensated by wrongdoers for interference with protected interests.

"II. The trial court erred in ruling that Ohio law disallows causes of action for wrongful life for the reason that Danielle Flanagan has sustained legally cognizable injuries as a result of appellees' negligence and is entitled to have this court recognize the claim for damages as a matter of Ohio common law."

The record reveals the following facts pertinent to this appeal. On September 7, 1989, Trina Flanagan first consulted with appellees Marietta Gynecological Associates and Dr. Williams, who determined that she was pregnant. On October 5, 1989, an ultrasound was performed on Mrs. Flanagan. Mrs. Flanagan had another ultrasound performed on November 2, 1989. At this time, the technician advised appellee Dr. White of the possibility of a developmental defect. Dr. White reviewed the ultrasound and asked for a repeat ultrasound at a later date. Apparently, neither the technician nor Dr. White indicated to appellants that there was a possible problem. A third ultrasound was conducted on December 27, 1989, at which time it was apparent that Mrs. Flanagan's fetus suffered from spina bifida, a defect of the spinal cord which can cause mild to severe disabilities. Mrs. Flanagan's care was then transferred to Dr. Iams[1] at Ohio State University for the remainder of Mrs. Flanagan's pregnancy.

It is not clear from the record when the Flanagans actually first learned of the spina bifida diagnosis.[2]

Danielle Flanagan was born on March 26, 1990 with severe and permanent disabilities as a result of spina bifida, including permanent paralysis from the waist down, severe mental retardation and hydrocephalus.

Appellants filed a complaint on May 3, 1991, alleging professional negligence or malpractice by appellees for failure to timely diagnose Danielle's spina bifida.[3] Appellees filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). In a decision filed September 2, 1992, the trial court classified appellants' causes of action as "wrongful birth" and "wrongful life," found that Ohio does not recognize these causes of action, and granted appellees' motion for judgment on the pleadings. A judgment entry was filed September 14, 1992 and appellants timely appealed.

Appellants contend in their assignments of error that the lower court wrongly entered judgment on the pleadings. The determination of a Civ.R. 12(C)

---

1. Dr. Iams is not a party to this action.

2. We can infer they were told when they began to see Dr. Iams in late December or early January. The stage of fetal development is not clear from the record; however, it appears that Mrs. Flanagan was into the third trimester.

3. Marietta Memorial Hospital was also named as a defendant but was voluntarily dismissed early in the litigation.

motion for judgment on the pleadings is restricted solely to the allegations in the pleadings; all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, are to be construed in favor of the nonmoving party. *Nelson v. Pleasant* (1991), 73 Ohio App.3d 479, 481, 597 N.E.2d 1137, 1138, citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165–166, 63 O.O.2d 262, 264–265, 297 N.E.2d 113, 116–117. A motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion and the same standards of review are applied. *Nelson*, 73 Ohio App.3d at 482, 597 N.E.2d at 1139. Therefore, a reviewing court will reverse judgment on the pleadings if plaintiffs can prove any set of facts which will entitle them to relief. *Id.* In other words, we independently review the motion to determine if it was properly granted as a matter of law.

This case presents issues of first impression in Ohio. Under appellants' first assignment of error, we must determine whether parents of a child born with congenital defects have a cause of action against physicians who fail to diagnose and/or inform the parents of the defect within the time period that they could choose whether to terminate the pregnancy. Appellants' second assignment of error presents the issue of whether the child born with the congenital defects has a cause of action against the physician. For the reasons which follow, we answer the first question in the affirmative and the second in the negative.

■ Various jurisdictions have recognized several different "prenatal" torts. A "wrongful pregnancy" cause of action is a lawsuit filed by a parent on his or her own behalf for damages resulting from the birth of a healthy, normal child following a failed sterilization. *Johnson v. Univ. Hosp. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370. Ohio allows this cause of action for a failed sterilization, *id.*; *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496, and in the case of a failed abortion, *Harmath v. Goler* (1990), 49 Ohio St.3d 62, 550 N.E.2d 476.

■ In a "wrongful birth" cause of action, parents bring an action seeking damages for the birth of an impaired child when the physician or health care provider failed to diagnose or discover a genetic defect in the parents or fetus through prenatal testing or counseling in time for the parent to obtain an abortion or prevent pregnancy. *Johnson*, 44 Ohio St.3d at 51, 540 N.E.2d at 1371.

■ A "wrongful life" action is brought by or on behalf of the child for negligent failure to sterilize parents. *Id.* The term "wrongful life" has also been used to describe actions by a child corresponding to the parents' "wrongful birth" cause of action. See *Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 460, 656 P.2d 483.

██ The Ohio Supreme Court has recognized the right of parents to recover in the "wrongful pregnancy" fact situation under common-law tort principles. *Johnson, supra; Bowman, supra.* However, when the child is born normal and healthy, damages are limited to the pregnancy itself; there can be no recovery of child-rearing expenses. *Johnson, supra,* paragraph two of the syllabus; *Harmath, supra.* In *Bowman,* the parents sued physicians for damages when twins, one of whom had disabilities, were born following a failed sterilization attempt. The court did not address the issue of damages. While the *Johnson* court did not specifically address the measure of damages when the child is not born healthy, the logical result is that in such a situation, the parents would be entitled to recover the extra costs of raising the child over and above the ordinary child-rearing expenses. In *Johnson,* the court based its decision to limit traditional tort damages on a public policy that the birth of a normal, healthy child cannot be an injury to her parents. *Johnson, supra,* paragraph two of the syllabus. We may logically conclude that when an unhealthy child is born, the parents suffer additional compensable injuries which may be proven at trial.

Neither the General Assembly nor Ohio courts have addressed the situation in the case at bar where the parents allege they were injured because they were not informed of the child's disabilities in time for them to exercise their right to choose whether to terminate the pregnancy. See *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, rehearing denied (1973), 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694; *Planned Parenthood of Southeastern Pennsylvania v. Casey* (1992), 505 U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674.

██ Appellees argue that appellants essentially state a new cause of action which should be recognized, if at all, by the Ohio Supreme Court or the Ohio General Assembly, and not by this court. See *High v. Howard* (1992), 64 Ohio St.3d 82, 592 N.E.2d 818, overruled on other grounds in *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052. However, we do not agree that an expansion of the common law is involved in the parents' claim. Regardless of how it is termed, Mr. and Mrs. Flanagan state a cause of action which sounds in medical malpractice utilizing traditional tort principles. In order to establish malpractice, appellants must prove that the injury complained of, here the denial of their right to make an informed choice about pregnancy termination, was directly and proximately caused by a practice that a physician of ordinary skill, care or diligence would not have done. *Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 548, 602 N.E.2d 423, 427, citing *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus. We note that most jurisdictions allow the parents a cause of action when they are not informed of congenital defects in sufficient time to allow them to exercise their right to choose whether to terminate or prevent pregnancy

either on a "wrongful birth" cause of action or under traditional common-law medical malpractice law.[4]

A review of the record clearly demonstrates that the appellants stated a claim of medical negligence sufficient to defeat a Civ.R. 12(C) motion for judgment on the pleadings. Appellants alleged a physician-patient relationship between Mrs. Flanagan and appellees. The physician-patient relationship is a fiduciary one based on trust and confidence and obligating the physician to exercise good faith. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 150, 569 N.E.2d 875, 878. This fiduciary duty gives rise to certain specific professional obligations including not only the duty to exercise due care and skill but also to fully inform the patient of her condition. *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 13 OBR 477, 469 N.E.2d 1047. See, also, Annotation, Malpractice, Failure of Physician to Notify Patient of Unfavorable Diagnosis or Test (1981, Supp.1992), 49 A.L.R.3d 501; 61 American Jurisprudence 2d (1981) 298, Physicians, Surgeons and Other Healers, Section 167.

Appellants also clearly alleged that appellees breached their duty to appellants by failing to timely diagnose or by failing to timely inform appellants of the fetus's spina bifida and potential disabilities. While it is unclear from the record presented here at what stage of fetal development appellees informed appellants of the fetus's defects, appellants clearly allege in their complaint that they were not informed until it was too late for them to properly consider an abortion. In fact, the statement of facts in appellees' brief concedes that although Dr. White suspected spina bifida after the November 2, 1989 ultrasound,

---

4. See, *e.g., Garrison v. Med. Ctr. of Delaware, Inc.* (Del.1989), 581 A.2d 288; *Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 460, 656 P.2d 483; *Smith v. Cote* (1986), 128 N.H. 231, 513 A.2d 341; *Walker by Pizano v. Mart* (1990), 164 Ariz. 37, 790 P.2d 735; *Viccaro v. Milunsky* (1990), 406 Mass. 777, 551 N.E.2d 8; *Lininger v. Eisenbaum* (Colo.1988), 764 P.2d 1202; *Naccash v. Burger* (1982), 223 Va. 406, 290 S.E.2d 825; *Pitre v. Opelousas Gen. Hosp.* (La.1990), 530 So.2d 1151; *Blake v. Cruz* (1984), 108 Idaho 253, 698 P.2d 315; *Goldberg by Goldberg v. Ruskin* (1984), 128 Ill.App.3d 1029, 84 Ill.Dec. 1, 471 N.E.2d 530, affirmed (1986), 113 Ill.2d 482, 101 Ill.Dec. 818, 499 N.E.2d 406; *Turpin v. Sortini* (1982), 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954; *Fassoulas v. Ramey* (Fla.1984), 450 So.2d 822; *Phillips v. United States* (D.S.C.1981), 508 F.Supp. 544; *Schroder v. Perkel* (1981), 87 N.J. 53, 432 A.2d 834; *Speck v. Finegold* (1981), 497 Pa. 77, 439 A.2d 110; *Robak v. United States* (C.A.7, 1981), 658 F.2d 471; *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807; *Jacobs v. Theimer* (Tex.1975), 519 S.W.2d 846.

For cases which do not allow parents a cause of action in this situation, see, *e.g., Campbell v. United States* (C.A.11, 1992), 962 F.2d 1579; *Hickman v. Group Health Plan, Inc.* (Minn.1986), 396 N.W.2d 10; *Atlanta Obstetrics & Gynecology Group v. Abelson* (1990), 260 Ga. 711, 398 S.E.2d 557; *Azzolino v. Dingfelder* (1985), 315 N.C. 103, 337 S.E.2d 528, certiorari denied (1986), 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75.

In Missouri, the state legislature has enacted a statute prohibiting a cause of action based upon the claim that, but for the negligence of another, the child would have been aborted. See *Shelton v. St. Anthony's Med. Ctr.* (Mo.1989), 781 S.W.2d 48.

a repeat ultrasound was not performed until nearly eight weeks later. A physician's failure to disclose material information regarding a patient's condition within the time necessary to effectively treat the condition certainly constitutes a claim of malpractice. *Leach, supra,* 13 Ohio App.3d 397–398, 13 OBR at 481–482, 469 N.E.2d at 1053–1054. The choice not to procreate, as a part of one's right to privacy, remains a constitutional guarantee subject to certain limitations. *Johnson, supra,* 44 Ohio St.3d at 51, 540 N.E.2d at 1371, citing *Bowman, supra.* Failure to diagnose and/or disclose information which is crucial to the exercise of this right is actionable as medical malpractice under traditional tort principles.

Appellants further allege in their complaint that appellees' breach proximately caused legally cognizable injuries, *i.e.,* the denial of their right to informed choice regarding termination of the pregnancy, see *Garrison, supra,* and the birth of a severely mentally and physically disabled child, see *Bowman, supra,* which will further cause them to incur substantial economic and emotional losses. Because appellants alleged a breach of a duty which proximately caused injuries, we cannot conclude beyond doubt that appellants can prove no set of facts entitling them to relief.

We note that failure to recognize that appellants stated a cause of action in malpractice would, in effect, immunize from liability those health care providers who negligently fail to provide adequate guidance to parents regarding potential genetic defects, either through pre-pregnancy counseling or prenatal care. See *Phillips v. United States* (D.S.C.1981), 508 F.Supp. 544, 550, citing *Berman v. Allen* (1979), 80 N.J. 421, 404 A.2d 8. Accordingly, appellants' first assignment of error is sustained.

In their second assignment of error, appellants challenge the judgment denying Danielle's claim. Neither the Ohio General Assembly nor the Ohio Supreme Court has specifically recognized a cause of action by a child seeking damages for being born with disabilities due to a physician's failure to diagnose or inform her parents about the child's genetic defect. Therefore, we must determine whether the child's complaint states a cause of action under traditional common-law principles. *High, supra.*

As noted above, one of the necessary elements to state a claim for medical malpractice is a legally cognizable injury. *Turner, supra; Bruni, supra.*

No Ohio court has specifically determined whether a disabled child has a legally cognizable injury for being born when the parents allege they would have aborted the child had they known of the disabilities.[5] However, in other contexts,

---

5. We note that most states which have considered the issue refuse to recognize being alive, even with severe disabilities, as an injury. For cases allowing a child to recover, either under

Ohio courts have declined to consider being, as opposed to non-being, as an injury. *Bowman* is often cited as expressing disapproval of the "wrongful life" cause of action although the *Bowman* court actually only notes that it was not dealing with a wrongful life cause of action and that other jurisdictions have been reluctant to recognize one. *Bowman, supra,* 48 Ohio St.2d at 45, 2 O.O.3d at 135, 356 N.E.2d at 498, fn. 3. In *Anderson v. St. Francis–St. George Hosp.* (1992), 83 Ohio App.3d 221, 614 N.E.2d 841, the court refused to recognize a "wrongful-living" cause of action when a patient who went into cardiac arrest was resuscitated, even though he and his family had agreed with his physician that this action was not to be taken and his chart was clearly marked. In refusing to allow damages, the court held that "life is not a compensable harm." *Id.* at 227, 614 N.E.2d at 845.

The common and statutory law of Ohio places an intrinsic value on life. In the absence of guidance from the Supreme Court or the General Assembly, we are not prepared to say that life, even with severe disabilities, constitutes an actionable injury. See *High, supra,* 64 Ohio St.3d at 85, 592 N.E.2d at 820. Because appellants can prove no set of facts which would entitle them to relief on Danielle's claim, judgment on the pleadings was proper and appellants' second assignment of error is overruled.

Accordingly, for all of the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*

*reversed in part*

*and cause remanded.*

STEPHENSON and GREY, JJ., concur.

---

a "wrongful life" cause of action or pursuant to a negligence claim, see, *e.g., Walker v. Mart* (1990), 164 Ariz. 37, 790 P.2d 735; *Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 460, 656 P.2d 483; *Turpin v. Sortini* (1982), 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954; *Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755.

For cases refusing to recognize such an injury, see, *e.g., Garrison, supra; Smith v. Cote, supra; Goldberg, supra; Viccaro, supra; Lininger, supra; James G. v. Caserta* (1985), 175 W.Va. 406, 332 S.E.2d 872.