**Patricia BADER, M.D., and Northeast Indiana Genetic Counseling, Inc., Appellants–Defendants,**

v.

**Ronald JOHNSON and Connie Johnson, Appellees–Plaintiffs.**

No. 02A05–9510–CV–396.

Court of Appeals of Indiana.

Jan. 14, 1997.

---

John M. Clifton, Jr. Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, for Appellants–Defendants.

Jack E. Morris, Benson, Pantello, Morris, James & Logan Fort Wayne, for Appellees–Plaintiffs.

## OPINION

BARTEAU, Judge.

Patricia Bader, M.D. and Northeast Indiana Genetic Counseling, Inc. (collectively "Bader") bring this interlocutory appeal to challenge the trial court's denial of their motion for summary judgment. At issue is whether Ronald and Connie Johnson (the "Johnsons") can recover damages for the wrongful birth of their child, and if so, what the measure of damages should be. We heard oral argument on June 17, 1996.

### *FACTS*

For purposes of the summary judgment motion, the parties agreed that the facts alleged by the Johnsons are true. In 1979, the Johnsons gave birth to a daughter born with congenital hydrocephalus and severe mental and motor retardation. She required extensive medical care until her death four months later. When Connie became pregnant again in 1982, the Johnsons sought genetic counseling with Dr. Bader due to their first child's congenital disabilities. Testing confirmed that the pregnancy was normal. The Johnsons again sought genetic counseling with Dr. Bader when Connie became pregnant in 1991. An amniocentesis performed on April 17, 1991, when the pregnancy was at 19½ weeks, revealed no abnormalities, but an ultrasound test performed on the

same day by Dr. Bader indicated a baby with larger than expected ventricular size and an unusual head shape. Dr. Bader requested that Connie be scheduled for follow-up testing. However, due to an office error Connie was not scheduled and the ultrasound report was not forwarded to Connie's treating physician.

Connie's treating physician performed an ultrasound at 33 weeks gestation and discovered that the baby suffered from hydrocephalus. It was too late to terminate the pregnancy and Connie gave birth to Kelly on September 4, 1991. Kelly suffered from hydrocephalus and multiple congenital defects and died from her condition on January 1, 1992. If the Johnsons had been made aware of the abnormalities existing at the time of the first ultrasound, they would have terminated the pregnancy.

The Johnsons brought this wrongful birth claim seeking damages for (1) their lost opportunity to terminate the pregnancy and having to proceed with the pregnancy, labor and delivery; (2) the emotional pain and anguish of knowing that their child would suffer multiple congenital defects with little chance of survival; (3) the care and treatment provided for their child; (4) the medical expenses incurred; (5) lost personal time and lost income; and (6) the emotional anguish of watching their child suffer and die. Ronald Johnson also included a claim for loss of consortium.

Bader moved for summary judgment on the grounds that Indiana does not recognize a claim for damages for wrongful birth. The trial court denied Bader's motion for summary judgment, concluding that the Johnsons could recover damages for wrongful birth if they proved each element of the negligence action and that the damages they could recover include (1) the extraordinary costs necessary to treat the birth defect, (2) any additional medical or educational costs attributable to the birth defect during the child's minority, (3) medical and hospital expenses incurred as a result of the physician's negligence, (4) the physical pain suffered by the mother, (5) loss of consortium, and (6) the mental and emotional anguish suffered by the parents.

## WRONGFUL BIRTH

At the start it will be helpful to define the terms used to describe various related claims so that it is clear what is and is not being claimed here. "Wrongful birth" refers to claims brought by parents of a child born with birth defects alleging that due to negligent medical advice or testing they were precluded from an informed decision about whether to conceive a potentially handicapped child or, in the event of a pregnancy, to terminate it. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). This is the claim involved in this appeal and Indiana has not yet addressed its viability. When such an action seeks damages on behalf of the child rather than the parents, the claim is referred to as "wrongful life." *Id.* Indiana has rejected claims for wrongful life. *Id.* "Wrongful conception or pregnancy" refers to a claim for damages sustained by the parents of an unexpected child alleging that the conception of the child resulted from negligent sterilization procedures or a defective contraceptive product. *Id.* Indiana recognizes this claim. *Garrison v. Foy,* 486 N.E.2d 5 (Ind.Ct.App.1985), *reh'g denied.*

Thirty-one (31) states and the District of Columbia have by case law or statute determined whether a claim for wrongful birth may be brought. Twenty-two (22) states and the District of Columbia have recognized such a claim by judicial decision. *Keel v. Banach,* 624 So.2d 1022 (Ala.1993); *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983); *Turpin v. Sortini,* 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954 (1982); *Lininger v. Eisenbaum,* 764 P.2d 1202 (Colo.1988); *Haymon v. Wilkerson,* 535 A.2d 880 (D.C. 1987); *Garrison v. Medical Center of Delaware, Inc.,* 581 A.2d 288 (Del.1989); *Kush v. Lloyd,* 616 So.2d 415 (Fla.1992); *Arche v. United States Dep't of Army,* 247 Kan. 276, 798 P.2d 477 (1990); *Reed v. Campagnolo,* 332 Md. 226, 630 A.2d 1145 (1993); *Viccaro v. Milunsky,* 406 Mass. 777, 551 N.E.2d 8 (1990); *Greco v. United States,* 111 Nev. 405, 893 P.2d 345 (1995); *Smith v. Cote,* 128 N.H. 231, 513 A.2d 341 (1986); *Schroeder v. Perkel,* 87 N.J. 53, 432 A.2d 834 (1981); *Becker v.*

*Schwartz,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); *Owens v. Foote,* 773 S.W.2d 911 (Tenn.1989); *Jacobs v. Theimer,* 519 S.W.2d 846 (Tex.1975); *Naccash v. Burger,* 223 Va. 406, 290 S.E.2d 825 (1982); *Harbeson v. Parke–Davis Inc.,* 98 Wash.2d 460, 656 P.2d 483 (1983); *James G. v. Caserta,* 175 W.Va. 406, 332 S.E.2d 872 (1985); *Dumer v. St. Michael's Hospital,* 69 Wis.2d 766, 233 N.W.2d 372 (1975); *Goldberg v. Ruskin,* 128 Ill.App.3d 1029, 84 Ill.Dec. 1, 471 N.E.2d 530 (1984); *Eisbrenner v. Stanley,* 106 Mich.App. 357, 308 N.W.2d 209 (1981); *Flanagan v. Williams,* 87 Ohio App.3d 768, 623 N.E.2d 185 (1993).

Additionally, two other states recognized the claim for wrongful birth by judicial decision, *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984), and *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981), but the action was subsequently barred by statute. Idaho Code § 5–334 (1985); 42 Pa.Cons.Stat. § 8305 (West Supp.1996). Four (4) other states have also barred a claim for wrongful birth by statute: Maine, 24 Me.Rev.Stat.Ann. § 2931 (West 1990); Minnesota, Minn.Stat. § 145.424 (West 1989); South Dakota, S.D. Codified Laws § 21–55–2; and Utah, Utah Code Ann. § 78–11–24 (1983). Missouri is commonly cited as a state that bars by statute claims for wrongful birth. *See* Mo.Ann. Stat. § 188.130 (Vernon 1986). But actually, Missouri only bars damages "arising from the possibility that but for the negligent conduct of defendants, the child would have been aborted." *Shelton v. St. Anthony's Medical Center,* 781 S.W.2d 48, 50 (Mo.1989). Claims asserting that the plaintiff suffered emotional distress because of the failure to be advised of the birth defects are allowed. *Id.*

Georgia and North Carolina bar claims for wrongful birth by judicial decision. *Atlanta Obstetrics & Gynecology Group v. Abelson,* 260 Ga. 711, 398 S.E.2d 557 (1990); *Azzolino v. Dingfelder,* 315 N.C. 103, 337 S.E.2d 528 (1985).

Thus, the overwhelming majority of courts have allowed claims for wrongful birth.

Bader argues in large part that the trial court erroneously denied summary judgment because Indiana has already rejected a claim for damages for wrongful life and the injury in a wrongful birth claim is the same as in a wrongful life claim. However, of the twenty-four (24) courts that have allowed an action for wrongful birth, at least eighteen (18) also have rejected claims for wrongful life. *Elliott v. Brown,* 361 So.2d 546 (Ala.1978); *Walker v. Mart,* 164 Ariz. 37, 790 P.2d 735 (1990); *Lininger,* 764 P.2d 1202; *Garrison,* 581 A.2d 288; *Kush,* 616 So.2d 415; *Blake,* 108 Idaho 253, 698 P.2d 315; *Goldberg v. Ruskin,* 113 Ill.2d 482, 101 Ill.Dec. 818, 499 N.E.2d 406 (1986); *Bruggeman v. Schimke,* 239 Kan. 245, 718 P.2d 635 (1986); *Viccaro,* 406 Mass. 777, 551 N.E.2d 8; *Greco,* 111 Nev. 405, 893 P.2d 345; *Smith,* 128 N.H. 231, 513 A.2d 341; *Becker,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807; *Speck,* 497 Pa. 77, 439 A.2d 110; *Nelson v. Krusen,* 678 S.W.2d 918 (Tex.1984); *James G.,* 175 W.Va. 406, 332 S.E.2d 872; *Dumer,* 69 Wis.2d 766, 233 N.W.2d 372; *Eisbrenner,* 106 Mich.App. 357, 308 N.W.2d 209; *Flanagan,* 87 Ohio App.3d 768, 623 N.E.2d 185.

 We follow suit and hold that the Johnsons may recover damages for the wrongful birth of their daughter. Contrary to Bader's argument, the injury in a wrongful birth claim is not the same as the injury in a wrongful life claim. In a wrongful life claim the tort system must put a value on a life with defects as opposed to no life at all, a requirement leading our Supreme Court to reject wrongful life actions. *See Cowe,* 575 N.E.2d at 635. However, in a wrongful birth claim the injury is not the life of the child as it is in a wrongful life claim. The injury in a wrongful birth claim is an injury to the parents, which is the loss of the opportunity to choose whether to terminate the pregnancy. The damages flowing from that injury are incurred by the parents, not the child, and include the emotional, physical and financial impact of being denied the opportunity to terminate the pregnancy.[1] Thus, the injury is not life itself as it is in the wrongful life

---

**1.** Whether the plaintiffs may recover for a specific type of damage is discussed in the next section addressing damages.

claim. *See, e.g., Kush,* 616 So.2d at 423–24; *Becker,* 386 N.E.2d at 818; *Dumer,* 233 N.W.2d at 376; *Eisbrenner,* 308 N.W.2d at 213.

Bader, again equating this claim with one for wrongful life, urges this court to defer to the legislature as our Supreme Court did in *Cowe.* However, we do not believe deference to the legislature is necessary because the parents' claim for wrongful birth can be resolved through a traditional tort analysis. "Whether a cause of action exists for the wrongs complained of and the damages sought here is a question that should be determined, in our opinion, according to traditional tort principles. Only a novel twist in the medical setting differentiates the present situation from the ordinary malpractice action." *Naccash,* 290 S.E.2d at 829; *see also Becker,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807; *Goldberg,* 471 N.E.2d 530; *Flanagan,* 87 Ohio App.3d 768, 623 N.E.2d 185; *Greco,* 111 Nev. 405, 893 P.2d 345; *Reed,* 332 Md. 226, 630 A.2d 1145; *Garrison,* 581 A.2d 288; *Owens,* 773 S.W.2d 911; *Lininger,* 764 P.2d 1202; *Harbeson,* 98 Wash.2d 460, 656 P.2d 483; *Smith,* 128 N.H. 231, 513 A.2d 341; *Proffitt v. Bartolo,* 162 Mich.App. 35, 412 N.W.2d 232 (1987), *appeal denied,* (1988).

■ Bader also points to another concern in recognizing a wrongful birth action: determining whether a claim will be permitted in particular cases because it is the parent who decides which defects would lead to terminating the pregnancy. The questions arise regarding

> [w]hen will parents ... be allowed to decide that their child is so 'defective' that given a chance they would have aborted it while still a fetus and, as a result, then be allowed to hold their physician civilly liable? When a fetus is only the carrier of a deleterious gene and not itself impaired? When the fetus is of one sex rather than the other?

*Azzolino,* 337 S.E.2d at 535. We are not persuaded by this argument because it essentially goes to the measure of damages. Parents have the unconditional right to an abortion during the first trimester of the pregnancy. Being deprived of the opportunity to exercise that right is an injury regardless of the reason for wanting to exercise it. The resulting damages may vary depending upon the fetus's particular condition and that is a determination for the jury to make. Our tort system already entrusts juries with the task of determining appropriate damages in a given case and a wrongful birth action requires nothing more.

■ Additionally, Bader argues that allowing damages for wrongful birth will increase the usage of pre-natal screening and will encourage physicians to advise abortions. First, we fail to see why we should discourage the use of pre-natal screening. Second, recognition of a claim for wrongful birth does not require physicians to counsel abortion. *See Eisbrenner,* 308 N.W.2d at 213. It merely allows recovery where a physician has negligently failed to advise parents about risks that their fetus faces.

■ Finally, Bader argues that proximate cause fails because the physician did not cause the genetic defect and the "child's handicap is an inexorable result of conception and birth." Brief of Appellant at 34 (quoting *Becker,* 413 N.Y.S.2d at 904, 386 N.E.2d at 816 (Wachtler, J., dissenting in part)). However, as we stated previously, the child's handicap is not the harm alleged to have resulted from the defendant's negligence. The harm proximately caused by the defendant's negligence is the "effect on the parents resulting from the denial to the parents of their right ... to decide ... whether to bear a child with a genetic or other defect." *Reed,* 630 A.2d at 1150 (quoting *Viccaro,* 551 N.E.2d at 10 n. 3). But for the physician's negligence, the parents would have been spared the injuries they suffered. *Reed,* 630 A.2d at 1152. This is no different than imposing liability for a missed diagnosis in other areas of medicine even though the physician did not cause the illness. *See Keel,* 624 So.2d at 1024. And, indeed, Indiana has recognized that damages can be recovered for the loss of the chance to recover when a physician fails to make a diagnosis. *Mayhue v. Sparkman,* 653 N.E.2d 1384 (Ind.1995).

■ Deterring negligent conduct and compensating the victims of those who act unrea-

sonably are the underlying principles of the law of negligence and those principles are furthered by allowing the recovery of damages for the wrongful birth of a child through a traditional tort analysis. *See, e.g., Keel* 624 So.2d at 1031; *Berman v. Allan,* 80 N.J. 421, 404 A.2d 8, 14 (1979); *Proffitt,* 412 N.W.2d at 237.

## DAMAGES

The trial court determined that the Johnsons could recover damages for (1) the extraordinary costs necessary to treat the birth defect, (2) any additional medical or educational costs attributable to the birth defect during the child's minority, (3) medical and hospital expenses incurred as a result of the physician's negligence, (4) the physical pain suffered by the mother, (5) loss of consortium, and (6) the mental and emotional anguish suffered by the parents. Bader argues that the only damages allowed should be the medical and other costs directly related to the mother carrying the child to term.

Opponents to claims for wrongful birth are correct when they point out the lack of uniformity in assessing damages for wrongful birth. Generally no issue has arisen regarding the recovery of expenses for the continued pregnancy and birth of the child, the mother's pain and suffering associated with the continued pregnancy and birth, and loss of consortium. However, the courts diverge on the elements of extraordinary medical and related expenses for the child and emotional distress damages for the parents. The vast majority of courts allow recovery of extraordinary medical and related expenses associated with the child's disability while the child is a minor.[2] *See, e.g., Keel,* 624 So.2d 1022; *Turpin,* 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954; *Lininger,* 764 P.2d 1202; *Haymon,* 535 A.2d 880; *Arche,* 247 Kan. 276, 798 P.2d 477; *Viccaro,* 406 Mass. 777, 551 N.E.2d 8; *Greco,* 111 Nev. 405, 893 P.2d 345; *Schroeder,* 87 N.J. 53, 432 A.2d 834, *Becker,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807; *Jacobs,* 519 S.W.2d 846; *Naccash,* 223 Va. 406, 290 S.E.2d 825; *Harbeson,* 98 Wash.2d 460, 656 P.2d 483; *Dumer,* 69 Wis.2d 766, 233 N.W.2d 372; *Goldberg,* 471 N.E.2d 530.

█ At least one court has applied the benefits rule, which offsets the recovery of expenses by the value of the benefit that the parents receive as parents. *See Eisbrenner,* 106 Mich.App. 357, 308 N.W.2d 209. This position has largely been rejected for the reason stated most eloquently by the New Jersey Supreme Court:

By limiting damages to those expenses that are actually attributable to the affliction, we are not conferring a windfall on Mr. and Mrs. Schroeder. Although they may derive pleasure from Thomas, that pleasure will be derived in spite of, rather than because of, his affliction. Mr. and Mrs. Schroeder will receive no compensating pleasure from incurring extraordinary medical expenses on behalf of Thomas. There is no joy in watching a child suffer and die from cystic fibrosis.

432 A.2d at 842. While we agree that in many cases, such as where the defects are severe or the child's life is short, parents are not receiving any compensating pleasure, there may be cases where the parents do receive some benefit. Thus, we believe the question of whether any benefit from the birth of the child has been derived that would offset the associated expenses is a factual question best left to the jury to evaluate on a case by case basis.

Recovery for emotional distress has caused the most problem for courts, as it does for this court. Courts have rejected such damages for different reasons. *See, e.g., Arche,* 247 Kan. 276, 798 P.2d 477 (under Kansas law, plaintiff must witness tortious act to recover for emotional distress); *Becker,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (too speculative); *Jacobs,* 519 S.W.2d 846 (too speculative as to pluses and minuses of parenting); *Goldberg,* 471 N.E.2d 530 (under Illinois law, damages for emotional distress can only be recovered where the emotional distress results from physical injury or illness); *See also Garrison,* 581 A.2d 288.

**2.** We need not determine whether extraordinary expenses beyond minority are recoverable be-

cause here Kelly died while still a minor.

Other courts have allowed damages for emotional distress but offset them by the benefits of parenting. *See, e.g., Harbeson,* 98 Wash.2d 460, 656 P.2d 483; *Eisbrenner,* 106 Mich.App. 357, 308 N.W.2d 209. New Hampshire allows recovery for pecuniary expenses resulting from emotional distress. *Smith,* 128 N.H. 231, 513 A.2d 341.

Some courts allow emotional distress damages as an exception to that jurisdiction's impact rule. *See, e.g., Kush,* 616 So.2d at 423 ("[T]hese parents went to considerable lengths to avoid the precise injury they now have suffered. We conclude that public policy requires the impact doctrine not be applied within the context of wrongful birth claims."); *Naccash,* 223 Va. 406, 290 S.E.2d 825. Other courts conclude that the parents' emotional distress is a direct harm resulting from the defendant's negligence and is properly included in damages. *See, e.g., Keel,* 624 So.2d 1022; *Berman,* 80 N.J. 421, 404 A.2d 8.

■■■ Neither Judge Garrard nor I agree with Judge Friedlander's opinion that the impact rule precludes the Johnsons from recovering emotional damages. Judge Garrard and I agree with the reasoning expressed by the Florida Supreme Court in *Kush* that the impact rule should not be applied in wrongful birth cases because the emotional distress is the precise injury that the parents were seeking to avoid. However, it is not necessary that we reject the impact rule because under existing Indiana law, damages for emotional distress may be recovered when:

> a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person .... [S]uch a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Shuamber v. Henderson,* 579 N.E.2d 452, 456 (Ind.1991). We have no difficulty concluding that both Connie and Ronald Johnson, as the parents of Kelly, were directly involved in the impact resulting from Bader's negligence. That impact was Connie's continued pregnancy, the birth of Kelly, Kelly's short struggle with life, and her death. Certainly the emotional trauma resulting could be serious in nature and of "a kind and extent normally expected to occur in a reasonable person." *Id.*

■■■ However, Judge Garrard and I part ways at this point on the issue of damages. In his concurring in part and dissenting in part opinion, ·Judge Garrard concurs with this author's opinion that the trial court was proper in determining that the Johnsons could recover damages for (1) the extraordinary costs necessary to treat the birth defect, (2) any additional medical or educational costs attributable to the birth defect during the child's minority, (3) medical and hospital expenses incurred as a result of the physician's negligence, (4) the physical pain suffered by the mother, and (5) loss of consortium, but Judge Garrard states that damages for emotional and mental anguish are not recoverable, not because of the impact rule as Judge Friedlander believes, but because they are speculative and because it is impossible to separate the damages caused by the Johnsons' lost opportunity to abort the fetus from other emotional distress attributable to bearing a child born with these defects.

Judge Garrard states that the emotional distress suffered by the Johnsons was both real and substantial and I agree. However, I do not agree with his conclusion that it is speculative or impossible for a jury to determine an appropriate amount of damages for emotional distress under the facts of this case. As our supreme court has already recognized, juries are "equally qualified to judge someone's emotional injury as they are to judge someone's pain and suffering or future pain and suffering." *Id.* at 455 (quoting *Cullison v. Medley,* 570 N.E.2d 27, 30 (Ind.1991)). It is true that it will be a difficult and complex decision, but Indiana law has always reflected a strong faith in the ability of a jury to decide complex questions. *Mayhue v. Sparkman,* 653 N.E.2d 1384. Therefore, as difficult as this decision may be, I believe it is not beyond their capability but, in fact, it is their duty to determine the

damages for the Johnsons' emotional and mental anguish resulting from Bader's negligence.

Therefore, we hold that the Johnsons are entitled to recover damages for the wrongful birth of their daughter, Kelly. We further hold that to the extent proved, the Johnsons may recover for their extraordinary medical and other expenses related to Kelly's defects, Connie's physical pain and suffering and the medical and other expenses related to her continued pregnancy and the birth of Kelly, and Ronald's loss of consortium. Judge Garrard and I find that the impact rule does not preclude recovery for damages for emotional distress, but Judge Garrard and Judge Friedlander decide, for different reasons, recovery for emotional damages are not permissible as they set out in their separate opinions on this issue.

The trial court's denial of Bader's motion for summary judgment is affirmed.

FRIEDLANDER, J., concurs, except with respect to the availability of damages for emotional distress in which he concurs in result with opinion with Judge Garrard that such damages are not available.

GARRARD, J., dissents in part and concurs in part with opinion.

## SEPARATE OPINION

FRIEDLANDER, Judge, concurring.

I agree with Judge Garrard that damages for emotional and mental anguish are not recoverable, but for a different reason. I believe that Indiana's modified impact rule precludes the recovery of such damages in the instant case.

As an initial matter, I agree with my colleagues that to the extent proved, the Johnsons are entitled to recover damages for the extraordinarily medical and other expense related to the care and treatment of Kelly's congenital defects, Connie's pain and suffering, and the medical and other expenses related to her continued pregnancy and the birth of Kelly, and Ronald's loss of consortium. Whether the Johnsons received any benefit from the loss of the opportunity to

terminate the pregnancy that would offset the damages is to be determined by the jury.

With regard to damages for emotional and mental anguish, in *Shuamber v. Henderson,* 579 N.E.2d 452 (Ind.1991), the supreme court modified the impact rule that had previously governed the availability of damages for emotional distress in Indiana. Under the new rule:

> When ... a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Id.* at 456. I acknowledge that some states that recognize the impact rule have determined that an exception to the rule would be made for the tort of wrongful birth. *See Kush,* 616 So.2d 415. I reject this proposition, however. In my view, pursuant to Indiana's modified impact rule, damages for emotional distress are not recoverable for the tort of wrongful birth because the parents' injuries did not result from a direct impact.

Accordingly, except with respect to the availability of damages for emotional distress, I agree that the trial court's denial of Bader's motion for summary judgment should be affirmed.

## OPINION DISSENTING IN PART AND CONCURRING IN PART

GARRARD, Judge, dissenting in part and concurring in part.

I concur with the majority opinion except that portion which would permit the parents to recover for mental and emotional anguish (distress) occasioned by the lost opportunity to elect an abortion. I would not, however, as does Judge Friedlander, premise that determination upon the operation of the contact rule.

I would reject permitting such recovery on the basis that such element is too speculative and conjectural. And I do not mean

that in the sense that emotional distress always presents a problem of quantification. Our courts have accepted that problem and dealt with it more-or-less successfully for many years. But as I perceive it, the mix here is different. If they are liable, the defendants are liable only for the damages proximately caused by their negligent act(s). Thus, as the lead opinion concedes, damages for emotional distress must be limited to that distress directly caused by the loss of the opportunity to terminate the pregnancy. Certainly these parents suffered emotional distress as the result of giving birth to Kelly with her defects. How does one then distinguish between and compartmentalize the distress attributable to the lost opportunity to abort the fetus from all the other distress attributable to carrying and bearing a child with these defects? What of the distress attributable to learning of the defects and then undergoing the decision and the ensuing effect of terminating the pregnancy? The distress these parents suffered from Kelly's birth and brief life is both real and substantial. I believe, however, that it is not capable of being separated into distinct derivative portions except in some wholly artificial, and therefore arbitrary and capricious manner. Yet without such separation there is no means of determining the distress for which the physician might properly be held liable. It is for this reason that I find such damages necessarily speculative and not recoverable in the action.